# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Johnson*, 2013 IL App (2d) 110535

---

| | |
|---|---|
| Appellate Court Caption | PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARYL L. JOHNSON, Defendant-Appellant.–PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARYL L. JOHNSON, Defendant-Appellant. |
| District & No. | Second District<br>Docket Nos. 2-11-0535, 2-11-0782 cons. |
| Filed | May 31, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for domestic battery and unlawful possession of a weapon by a felon were vacated and the cause was remanded for two separate trials, since defendant's counsel's ineffectiveness in agreeing to the joinder of the charges, accompanied by the trial court's improper instructions on other-crimes evidence, especially the lack of instruction on the limited purpose for which the other-crimes evidence was to be considered, prejudiced defendant and resulted in plain error that undermined the integrity of the judicial process. |
| Decision Under Review | Appeal from the Circuit Court of Kendall County, Nos. 10-CF-141, 10-CM-409; the Hon. John A. Barsanti, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on Appeal

Thomas A. Lilien and Yasemin Eken, both of State Appellate Defender's Office, of Elgin, for appellant.

Eric C. Weis, State's Attorney, of Yorkville (Lawrence M. Bauer and Richard S. London, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Jorgensen and Hudson concurred in the judgment and opinion.

## OPINION

¶ 1        At a jury trial, the State introduced evidence that, on April 29, 2010, defendant, Daryl L. Johnson, choked, grabbed, and shoved his girlfriend, Cheryl Hausler, and that the police recovered a handgun and ammunition from defendant's room in Hausler's home the next day. The jury found defendant guilty of two counts of unlawful possession of a weapon by a felon (see 720 ILCS 5/24-1.1(a) (West 2010)) and one count of misdemeanor domestic battery (see 720 ILCS 5/12-3.2(a)(2) (West 2010)). The trial court imposed concurrent terms of 6 years in prison on the weapons convictions and 365 days in jail on the domestic battery conviction.

¶ 2        Defendant appeals, alleging the following trial errors: (1) defense counsel rendered ineffective assistance when she agreed to join the weapons charges with the domestic battery charge; (2) the trial court erroneously admitted evidence of defendant's threats to Hausler; (3) the use of a defective jury instruction regarding other-crimes evidence is plain error; and (4) the cumulative effect of these errors deprived defendant of a fair trial. We conclude that defense counsel was ineffective in agreeing to join the charges and that the jury was incorrectly instructed in several respects. We hold that defense counsel's ineffectiveness in agreeing to the joinder of charges and the trial court's use of an incorrect jury instruction were reversible errors that deprived defendant of a fair trial. The joinder error and the instruction error were intertwined, which amplified the prejudice to defendant. We vacate the convictions and remand the cause for new, separate trials.

¶ 3                                    I. FACTS

¶ 4        Defendant was charged by indictment in case number 10-CF-141 with two counts of unlawful possession of a weapon by a felon. "It is unlawful for a person to knowingly

possess on or about his person or on his land or in his own abode or fixed place of business *** any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2010). The first count alleged that defendant knowingly possessed a firearm, and the second count alleged that defendant knowingly possessed firearm ammunition.

¶ 5    In case number 10-CM-409, defendant was charged by complaint with misdemeanor domestic battery against Hausler. A person commits domestic battery if he or she knowingly without legal justification by any means makes physical contact of an insulting or provoking nature with any family or household member. 720 ILCS 5/12-3.2(a)(2) (West 2010). The charge alleged that defendant repeatedly choked Hausler and pushed her in the collarbone area, causing her to strike her back on a television entertainment center. The parties agreed to join the three charges for purposes of a jury trial.

¶ 6                            A. Pretrial Motions

¶ 7    Before trial, the State moved to introduce evidence of other domestic violence incidents to show defendant's propensity to commit the charged domestic battery. The common-law rule is that other-crimes evidence is not admissible to show a defendant's propensity to commit crimes. *People v. Dabbs*, 239 Ill. 2d 277, 283 (2010); see Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, by statute, the legislature has made exceptions to that rule in a few specific areas, such as domestic batteries (725 ILCS 5/115-7.4, 115-20 (West 2010)). *Dabbs*, 239 Ill. 2d at 291; see Ill. R. Evid. 404(b) (recognizing statutory exceptions to the general rule of inadmissability). In those instances, evidence of a defendant's commission of a prior qualifying offense may be admitted, in the trial court's discretion, to show the defendant's propensity to commit the charged offense if, after weighing certain statutory factors, the trial court determines that the probative value of the evidence is not substantially outweighed by the risk of undue prejudice. See 725 ILCS 5/115-7.4 (West 2010); *Dabbs*, 239 Ill. 2d at 291; see also Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 8    Section 115-7.4 provides that, in weighing the probative value of the evidence against the prejudice to the defendant, the trial court may consider (1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; and (3) other relevant facts and circumstances. 725 ILCS 5/115-7.4(b) (West 2010).

¶ 9    The State submitted written statements signed by Hausler, which she gave after defendant's arrest. Defense counsel objected to the evidence as prejudicial and irrelevant. The trial court found certain statements to be admissible under section 115-7.4. Specifically, Hausler described two days on which defendant allegedly committed domestic violence against her before he committed the charged offense in April 2010.

¶ 10   The court ruled that Hausler could testify that, in December 2009, defendant pushed her and shook her very hard. Hausler also could testify that, in March 2010, defendant grabbed a phone from her hand, shook her by the shoulders, flipped over a recliner in which she was sitting, held her down, and threw a coffee table, which struck her legs, bruising one.

¶ 11   The court also found that, though not admissible under section 115-7.4, certain threats that defendant allegedly made during the December 2009 and March 2010 incidents were

admissible for purposes other than to show propensity. Specifically, Hausler could testify that defendant threatened to kill her and "have a shootout" with the police if she reported his conduct to the police. The court commented that "the fact-finder would want to know why [Hausler] didn't report it" to the police.

¶ 12　　Before trial, the parties stipulated to defendant's prior felony conviction for purposes of the charges of unlawful possession of a weapon by a felon. The State agreed that, if defendant testified, his prior felony conviction was inadmissible for impeachment purposes, because it was more than 10 years old. See *People v. Montgomery*, 47 Ill. 2d 510, 516 (1971) (a witness's prior conviction is admissible for impeachment purposes only where (1) the crime was punishable by death or imprisonment of more than one year, or the crime involved dishonesty or a false statement; (2) the conviction is less than 10 years old; and (3) the trial judge determines that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice).

¶ 13　　　　　　　　　　　　　　　　B. The Trial

¶ 14　　Hausler testified that she and defendant began cohabiting in her home in November 2009. Defendant had his own room where he kept his personal belongings, and he did not allow anyone else to enter his room. At 7:40 a.m. on April 29, 2010, Hausler awoke and took her dogs to the backyard. As she called the dogs back to the house, she walked backward, turned around, and saw defendant standing right in front of her. Hausler testified that she is 5 feet 3 inches tall, while defendant is at least 6 feet 1 inch tall. Defendant stood 9 to 10 inches away, glaring down at Hausler and holding a travel mug with coffee. Defendant said, "Do you realize I've been drinking this coffee for two days?" Defendant sounded angry. Hausler replied that defendant should "make more coffee if [he] want[ed] more coffee." Defendant responded, "Do you realize yesterday was my birthday?" Hausler told him that she did not.

¶ 15　　Defendant's voice became louder, and he moved closer to Hausler. Defendant said, "Do you realize today is my mother's birthday? And she was murdered on my 13th birthday." Defendant put down his mug, grabbed Hausler by the throat, and squeezed until she could not breathe. Defendant pushed Hausler into the living room and into the television, which almost fell off the stand. Defendant grabbed her by the shoulders and shook her hard, telling her, "the only way to make you listen is to shake you."

¶ 16　　Defendant stopped shaking Hausler and walked toward the door. Hausler waited a couple minutes and thought about what she should do next. She was scared, nervous, and upset. After defendant calmed down, Hausler told him that she needed to take the puppy outside.

¶ 17　　Defendant went to the bathroom, and Hausler walked across the street to the house of Michael Isabell. Isabell called 911, and Hausler told the operator what had happened. The police arrived a short time later.

¶ 18　　The next day, Hausler called the police and asked them to retrieve a gun from her home. Hausler testified that she had found the gun in December 2009, while defendant was on the road for his job as a cross-country truck driver. Hausler found the gun in a black nylon bag in defendant's bedroom. During a telephone conversation later that month, Hausler told defendant that she found the gun and did not want it in the house. Defendant replied that he

needed the gun to protect her and the house. Defendant was upset that Hausler had entered his room.

¶ 19    Hausler testified that, on another occasion in December 2009, defendant pushed her into the kitchen counter and the sink. Hausler sat on the sofa, and defendant started shaking her. Hausler struck her head on the back of the sofa. She did not call the police, because defendant threatened to kill her if she did so.

¶ 20    Hausler testified to another incident in March 2010, which was a few weeks before the charged offenses occurred. Hausler was in the kitchen when defendant grabbed her cell phone and started shaking her. Defendant followed Hausler around so she could not leave the house. Hausler sat in a recliner in the living room, and defendant lifted the chair and flipped Hausler over. Later the same day, defendant again took Hausler's phone and also threw her laptop computer. Defendant then picked up the coffee table and threw it at Hausler, hitting both of her legs. Hausler suffered a large bruise on her right thigh. Defendant told Hausler that, if she called the police, there would be a shootout and he would kill himself, her, and the police.

¶ 21    On cross-examination, Hausler testified that she never gave defendant a key to her home. As a truck driver, defendant would be gone for several days at a time. Overall, defendant would stay at her house about half the time. Hausler always was home when defendant returned, and she allowed him back into the home. Hausler's son, Tyler, had access to the entire house. Also, a person named John Gamble was renting a room. Gamble lived mostly in the basement, but he had access to the entire house. The police discovered the gun in what used to be Tyler's room. Defendant had taken over the room, after which Tyler never entered it.

¶ 22    When Hausler discovered the gun in December 2009, she told Tyler, who told her to call the police. Hausler acknowledged that she did not contact the police after the December 2009 gun discovery or the March 2010 domestic violence incident.

¶ 23    On redirect examination, Hausler testified that, when Gamble moved out, he took all of his belongings. When Tyler moved out of the room that defendant took over, he removed all of his things from the room. Hausler testified that she waited to call the police because defendant had threatened her and she was afraid.

¶ 24    Isabell testified that, on the morning of April 29, 2010, Hausler walked barefoot to his house. Hausler was crying and shaking. Isabell saw that her neck had red marks, which looked like they were caused by "squeezing." Isabell called 911 and handed the phone to Hausler.

¶ 25    Sergeant Norman Allison testified that he was dispatched to a "domestic battery" in progress. The Plano police station was right around the corner from Hausler's home, so he arrived in a matter of seconds. Sergeant Allison encountered Hausler, who still was across the street with Isabell. Hausler was crying and "kind of shaken up." Two other officers arrived and went with Sergeant Allison to Hausler's home, where they arrested defendant in the backyard. Sergeant Allison returned to Hausler and saw a very faint red mark on her neck. Sergeant Allison asked Hausler whether the mark was a "tan line," and she answered that she and defendant had an altercation in the house and that defendant placed his hands

around her neck.

¶ 26    Detective Gene Morton testified that defendant waived his *Miranda* rights and spoke about the incident. Defendant told Detective Morton that he was going to get some coffee when Hausler entered the kitchen. Defendant "kind of spun her around" because they were continuing an argument from the previous day. Defendant admitted that he grabbed Hausler by the shoulders and turned her around. Defendant did not indicate that there was any other physical contact.

¶ 27    Detective Morton testified that, the day after defendant's arrest, he and Sergeant Allison went to Hausler's house after she asked them to retrieve a gun. Hausler signed a consent-to-search form and directed the officers to a bedroom, which contained male clothing, including army fatigues, and identification and paperwork belonging to defendant. Detective Morton testified that he saw bags, "like suitcases," along two walls. Detective Morton saw on the floor an unzipped, black bag that contained a gun, ammunition, and two reloaders. The gun was loaded with six rounds.

¶ 28    Kimberly Hood, a forensic scientist, testified as an expert in the examination, comparison, and identification of fingerprints. She found a fingerprint on the gun that was suitable for comparison, but it did not match defendant.

¶ 29    The State presented the stipulation that defendant previously had been convicted of a felony in Cook County. The trial court advised the jury that "[t]his information concerning the agreement of these facts can be used by you like any other evidence in this case to come to your verdict."

¶ 30    Defendant testified that, on the morning of the incident, he was living with Hausler, Tyler, and Gamble. Defendant saw friends come to the house "almost every day." On April 29, 2010, defendant was in the kitchen making coffee when Hausler entered the room. Defendant asked if he could drink some coffee, and Hausler approached him and asked whose coffee he would be drinking. Defendant responded that it was his, and Hausler looked perplexed. Defendant placed his arms around her in a hug. Defendant asked why she did not remember that it was his birthday, since they had made plans to celebrate. Defendant placed his hands on Hausler's shoulders because he could not see things that were not in front of him. Defendant held onto her shoulders and physically turned her around so she could look him in the eye. Defendant denied shaking Hausler or placing his hands on her neck.

¶ 31    Defendant spoke to Hausler for about two minutes and turned to retrieve his coffee, and when he turned back, Hausler was gone. Defendant went to the backyard and smoked a cigarette at the picnic table. The police arrived about five minutes later.

¶ 32    Defendant denied that the December 2009 and March 2010 incidents occurred. Defendant also denied discussing a gun with Hausler.

¶ 33    On cross-examination, defendant testified that Gamble had property at the house. Defendant admitted that he kept his cars, clothes, personal hygiene kit, and paperwork at Hausler's home, but he stated that he kept belongings in every room. Defendant admitted that he left his clothes and other items in one of the bedrooms and would be upset if a person went through his things. Defendant testified that there was no lock on the bedroom door and that he never told Hausler that he wanted people to stay out.

¶ 34　　On redirect examination, defendant testified that, when he moved into Hausler's home, the bedroom he used contained certain items that were not his, including a pair of men's boots, a saxophone, a baseball, and baseball bats.

¶ 35　　The trial court instructed the jury that it could consider the evidence of defendant's "conduct other than those charged in the indictment," for purposes of "intent, motive, design, knowledge, absence of mistake, and propensity." The jury found defendant guilty of domestic battery and both weapons charges. The court imposed concurrent terms of 6 years' imprisonment on the weapons convictions and 365 days in jail for the domestic battery. Defendant filed these timely appeals, which we consolidated.

¶ 36　　　　　　　　　　　　　　II. ANALYSIS

¶ 37　　On appeal, defendant argues that he is entitled to new, separate trials on the weapons charges and the domestic battery charge because (1) defense counsel rendered ineffective assistance by agreeing to join the weapons charges with the domestic battery charge; (2) the trial court erroneously allowed Hausler to testify about threats defendant made during the December 2009 and March 2010 incidents; (3) the use of a defective jury instruction regarding other-crimes evidence is plain error; and (4) the cumulative effect of these errors deprived defendant of a fair trial.

¶ 38　　We conclude that defense counsel was ineffective in agreeing to join the charges and that the jury was incorrectly instructed on other-crimes evidence, on defendant's prior felony conviction, and on the evidence concerning the firearm and ammunition. We hold that defense counsel's ineffectiveness in agreeing to the joinder of the charges and the trial court's use of an incorrect jury instruction deprived defendant of a fair trial. Defendant is entitled to new, separate trials: one for domestic battery and one for the two counts of unlawful possession of a weapon by a felon.

¶ 39　　　　　　　A. Joinder of Charges and Ineffective Assistance

¶ 40　　Defendant argues that his counsel rendered ineffective assistance by agreeing to join the domestic battery charge with the charges of unlawful possession of a weapon by a felon. Both the United States and Illinois Constitutions guarantee a defendant the right to effective assistance of counsel. See U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The purpose of this guarantee is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984); *People v. Pineda*, 373 Ill. App. 3d 113, 117 (2007). The ultimate focus of the inquiry is on the fundamental fairness of the challenged proceedings. *Strickland*, 466 U.S. at 696; *Pineda*, 373 Ill. App. 3d at 117. "However, there is a strong presumption of outcome reliability, so to prevail, a defendant must show that counsel's conduct 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Pineda*, 373 Ill. App. 3d at 117 (quoting *Strickland*, 466 U.S. at 686).

¶ 41　　Claims of ineffective assistance of counsel are generally evaluated under the two-part test set forth in *Strickland*, 466 U.S. at 687, and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). *People v. Harris*, 225 Ill. 2d 1, 20 (2007). Under

*Strickland*, defense counsel was ineffective only if (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's error prejudiced the defendant. Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 687; *Pineda*, 373 Ill. App. 3d at 117.

¶ 42      Defendant argues that counsel's decision to acquiesce in the joinder of the charges had the effect of allowing the jury to consider otherwise inadmissible other-crimes evidence, which caused him to be prejudiced. First, defendant contends that, in the unlawful-possession-of-a-weapon-by-a-felon case, the jury should not have considered the two uncharged domestic violence incidents or the threats that accompanied those incidents. Second, defendant argues that, in the misdemeanor domestic battery case, the jury should not have considered his prior felony conviction. We note that an erroneous jury instruction is a matter separate from the joinder of the charges, but we conclude that the joinder of the charges, coupled with the improper jury instructions, mandates new, separate trials with precise jury instructions.

¶ 43                              1. Unreasonable Performance

¶ 44      We assess counsel's performance using an objective standard of competence under prevailing professional norms. *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010). To establish deficient performance, the defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy. *Ramsey*, 239 Ill. 2d at 433. As a result, counsel's strategic choices that are made after investigation of the law and the facts are virtually unassailable. *Ramsey*, 239 Ill. 2d at 433.

¶ 45      We conclude that defense counsel's representation fell below an objective standard of reasonableness because the charges should not have been joined and there was no sound defense strategy for agreeing to do so. A court may order two or more charges to be tried together "if the offenses *** could have been joined in a single charge." 725 ILCS 5/114-7 (West 2010). "Two or more offenses may be charged in the same [charging instrument] in a separate count for each offense if the offenses charged *** are based on the same act or on 2 or more acts which are part of the same comprehensive transaction" (725 ILCS 5/111-4(a) (West 2010)), unless it appears that the defendant will be prejudiced by joinder of the separate charges (725 ILCS 5/114-8 (West 2010)). *People v. Walston*, 386 Ill. App. 3d 598, 601 (2008).

¶ 46      A trial court has substantial discretion in deciding whether to sever separate charges, and its decision will not be reversed on appeal absent an abuse of that discretion. *Walston*, 386 Ill. App. 3d at 600. An abuse of discretion occurs only where no reasonable person would agree with the trial court's ruling. *Walston*, 386 Ill. App. 3d at 601. The trial court here did not address the joinder question directly, but instead allowed the charges to be joined because the parties agreed to it. Thus, we have no application of discretion to review for abuse. See *Walston*, 386 Ill. App. 3d at 601. In any event, however, we agree with defendant that the weapons charges should not have been joined with the domestic battery charge.

¶ 47      A number of factors affect whether two or more crimes are part of the "same comprehensive transaction" so as to be susceptible to joinder. The factors routinely are

-8-

described as (1) "the proximity in time and location of the offenses"; (2) "the identity of evidence needed to demonstrate a link between the offenses"; (3) "whether there was a common method in the offenses"; and (4) "whether the same or similar evidence would establish the elements of the offenses." (Internal quotation marks omitted.) *Walston*, 386 Ill. App. 3d at 601 (quoting *People v. Gapski*, 283 Ill. App. 3d 937, 942 (1996)).

¶ 48    First, "the proximity in time and location of the offenses," the most helpful factor by far, asks whether the offenses to be joined were close in time and location. As events become separated by time and distance, the likelihood decreases that they may be considered part of the same comprehensive transaction as is required by the statute. *Walston*, 386 Ill. App. 3d at 603. "[N]o matter how similar two incidents are, incidents not occurring within a very close time and space to one another will most likely be separate incidents." *Walston*, 386 Ill. App. 3d at 605.

¶ 49    In this case, the factor of proximity in time and location of the offenses is neutral. The domestic battery and defendant's constructive possession of the handgun and ammunition both allegedly occurred at Hausler's home. However, the evidence suggests that the handgun was in defendant's room when he allegedly committed the domestic battery. That incident began outside, where defendant allegedly choked Hausler, and then moved into the living room, where defendant allegedly pushed her into the television and shook her. Thus, the offenses of domestic battery and unlawful possession of a weapon by a felon allegedly occurred on the same premises, but in different locations on the premises. Defendant asserts that, because Hausler discovered the handgun in December 2009 and the domestic battery occurred in April 2010, the offenses have no temporal connection. However, there was evidence that defendant had constructive possession of the handgun in December 2009 and when he was taken into custody for the domestic battery. Thus, the evidence presented creates a reasonable inference that defendant was in constructive possession of the handgun when the domestic battery occurred.

¶ 50    Second, "the identity of evidence needed to demonstrate a link between the offenses" is a factor that asks "not whether evidence of the two crimes is similar or identical but rather whether the court can identify evidence linking the crimes." (Emphases omitted.) *Walston*, 386 Ill. App. 3d at 605. For example, in *People v. Quiroz*, 257 Ill. App. 3d 576 (1993), the appellate court noted that there was evidence linking two shootings to an alleged armed robbery the defendant committed during his escape: during the time between the two sets of crimes, the defendant had attempted to gain entrance into the home of a fellow gang member as he fled the scene of the shootings. *Quiroz*, 257 Ill. App. 3d at 586. The defendant's intervening attempt to hide in the house linked his crimes of shooting two people and stealing a car to escape. *Quiroz*, 257 Ill. App. 3d at 586. In this case, the domestic battery and defendant's unlawful possession of the handgun and ammunition cannot be linked by any evidence. The State's theory is that defendant's constructive possession of the weapon and his verbal threats caused Hausler not to report the December 2009 and March 2010 incidents when they occurred. However, the existence of the weapon and defendant's threats had no such effect on Hausler on the date of the charged domestic battery. Hausler testified that, within a few minutes of the domestic battery, she fled to her neighbor's house and spoke to the police, which creates the reasonable inference that defendant's weapon and his threats

to use it did not discourage Hausler from reporting the violent incident. Thus, the threats do not link the domestic battery with the weapons offenses.

¶ 51      Third, the "common method" factor in the joinder analysis asks whether the offenses were part of a "common scheme," so that each of the offenses supplies a piece of a larger criminal endeavor. *Walston*, 386 Ill. App. 3d at 606-07 (citing *Quiroz*, 257 Ill. App. 3d at 586 (three crimes were part of a common scheme where the last crime was committed in an attempt to flee the scene of the first two)). In this case, the unlawful possession of the handgun and ammunition can be viewed as part of a common scheme with each of the *uncharged* domestic violence incidents but not with the *charged* domestic battery. There was no evidence that defendant committed the charged domestic battery to facilitate his ongoing possession of the handgun. Similarly, defendant's possession of the handgun was not part of a common criminal scheme in committing the charged domestic battery.

¶ 52      Fourth, the question of "whether the same or similar evidence would establish the elements of the offenses" may be considered in the joinder analysis, but only if it is used to determine whether multiple offenses are part of a single comprehensive transaction. (Internal quotation marks omitted.) *Walston*, 386 Ill. App. 3d at 607. In this case, defendant's status as a felon and his constructive possession of the handgun and ammunition, which are the elements of the weapons charges, share no commonality with the evidence of his physical contact with Hausler on the date of the arrest.

¶ 53      The first factor is neutral, and the remaining factors weigh against joinder of the charges. We hold that the offenses of domestic battery and unlawful possession of a weapon by a felon were not part of the same comprehensive transaction so as to warrant joinder.

¶ 54      The State contends that, while defense counsel's decision to allow the joinder ultimately failed, the decision was unassailable trial strategy. We disagree. The record shows that defense counsel's decision to go along with the joinder was based more on convenience than strategy. In explaining why the parties had agreed on joinder, the prosecutor told the court, "[A]t this point in time I have spoken to Counsel[;] both 10-CF-141 and 10-CM-409 are scheduled for jury trial on the same date and the same time and we are asking that they be heard at the same time." To which defense counsel commented, "That's correct." Besides scheduling, the temporal proximity of the offenses was the only reason given for joining the cases.

¶ 55      The State characterizes the prosecution as a credibility contest between defendant and Hausler, which is accurate considering that defendant denied the occurrence of any of the domestic violence incidents, including the charged domestic battery, and denied discussing a handgun with Hausler. Thus, the State asserts that joining the charges was defense strategy because it "presented the best opportunity to challenge the credibility of the complaining witness and possibly obtain an acquittal in both cases." Exposing one's client to only one trial might be a sound strategy for minimizing the risk of conviction in some instances, but not in this case. In the domestic battery case, the jury was improperly informed of defendant's status as a felon. See *Montgomery*, 47 Ill. 2d at 516 (prior conviction is not admissible for impeachment purposes when the conviction is at least 10 years old). Similarly, in the unlawful-possession-of-a-weapon-by-a-felon case, the jury was informed of the

charged domestic battery, two instances of uncharged domestic violence, and the threats that accompanied those uncharged incidents. Though prejudicial, this evidence was possibly relevant to show defendant's constructive possession of the weapon and to explain the timing of Hausler's reporting of the gun to the police. However, the evidence required a precise limiting instruction to make these purposes clear. We view no strategic reason for counsel's acquiescence to the joinder, especially in light of counsel's failure to attempt to fashion a limiting instruction on other-crimes evidence. We hold that defendant has overcome the strong presumption that counsel's action was the result of sound trial strategy. See *Ramsey*, 239 Ill. 2d at 433.

¶ 56                                   2. Prejudice

¶ 57    To establish prejudice, the defendant must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Pineda*, 373 Ill. App. 3d at 117 (quoting *Strickland*, 466 U.S. at 694). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Pineda*, 373 Ill. App. 3d at 117 (quoting *Strickland*, 466 U.S. at 694). The prejudice component of *Strickland* entails more than an "outcome-determinative test"; rather, the defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000); *Pineda*, 373 Ill. App. 3d at 117.

¶ 58    We conclude that defendant has met his burden to affirmatively prove prejudice. See *Strickland*, 466 U.S. at 693; *Pineda*, 373 Ill. App. 3d at 117. Defense counsel's improper acquiescence to the joinder of the charges rendered the result of the trial unreliable. The joinder and the use of a defective instruction, which we address later, created the reasonable probability that the jury found defendant guilty of unlawful possession of a weapon by a felon after improperly considering the two uncharged domestic violence incidents and the threats that accompanied those incidents. Moreover, in the misdemeanor domestic battery case, there is a reasonable probability that the jury improperly considered defendant's prior felony conviction. The fundamental fairness of the proceedings was compromised. See *Strickland*, 466 U.S. at 696; *Pineda*, 373 Ill. App. 3d at 117.

¶ 59                              B. Evidence of Threats

¶ 60    Because the issue is likely to arise at trial on remand, we address defendant's argument that the trial court committed reversible error in granting the State's motion *in limine* and admitting evidence of defendant's threats. Hausler testified that, following a violent episode in December 2009, defendant threatened to kill her if she called the police. Hausler also testified that, following another violent episode in March 2010, defendant said that, if she called the police, there would be a shootout and he would kill himself, her, and the police.

¶ 61    Other-crimes evidence encompasses misconduct or criminal acts that occurred either before or after the alleged criminal conduct for which the defendant is standing trial. *People v. Spyres*, 359 Ill. App. 3d 1108, 1112 (2005). Other-crimes evidence is admissible to prove any material fact relevant to the case (*People v. Donoho*, 204 Ill. 2d 159, 170 (2003)), but is

inadmissible if it is relevant only to demonstrate a defendant's propensity to engage in criminal activity (*People v. Hendricks*, 137 Ill. 2d 31, 52 (1990)). Such evidence may be admissible when it is relevant to show, among other things, motive, intent, identity, absence of mistake or accident, *modus operandi*, or the existence of a common plan or design. *People v. Wilson*, 214 Ill. 2d 127, 135-36 (2005). However, relevant other-crimes evidence may yet be excluded if its prejudicial effect substantially outweighs its probative value. *People v. Illgen*, 145 Ill. 2d 353, 365 (1991).

¶ 62    The admissibility of other-crimes evidence is left to the trial court's sound discretion, and we will not disturb that decision absent a clear abuse of discretion. *Wilson*, 214 Ill. 2d at 136. A trial court's determination constitutes an abuse of discretion if it is arbitrary, fanciful, or unreasonable, or if no reasonable person would take the view adopted by the trial court. *Illgen*, 145 Ill. 2d at 364.

¶ 63    On appeal, defendant does not challenge the trial court's determination that the domestic violence incidents in December 2009 and March 2010 were admissible under section 115-7.4 to show his propensity to commit the charged domestic battery. However, defendant argues that his verbal threats that accompanied those incidents were not admissible for any purpose. Hausler testified that defendant made the threats during the incidents that the trial court already had ruled admissible to show propensity under section 115-7.4. One could argue that the trial court would not have abused its discretion in also admitting the threats to show propensity under section 115-7.4, because the threats were directly related to the domestic violence incidents. See 725 ILCS 5/115-7.4 (West 2010); *Dabbs*, 239 Ill. 2d at 291; see also Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 64    In any event, the trial court admitted the threats not to show propensity but to explain Hausler's failure to contact the police after the incidents in December 2009 and March 2010. One could also argue that defendant's threats were admissible to show defendant's intent and lack of mistake. The threats tended to make the existence of a material fact more or less probable than it would have been without the evidence. Defendant testified, and defense counsel argued in closing argument, that Hausler, not defendant, was upset on the day of the offense. Defense counsel argued that defendant did not choke Hausler, but merely hugged her. Defendant testified that he placed his hands on Hausler's shoulders, but that he did so only to look her in the eye. Defendant denied shaking Hausler, placing his hands around her neck, or squeezing her, besides offering a hug. Defendant denied that the December 2009 and March 2010 incidents occurred at all. Defense counsel also argued that Hausler was not credible because she had failed to report the prior incidents. Thus, one could argue that Hausler's testimony about defendant's threats was relevant to explain Hausler's failure to report the prior incidents and to establish that defendant intended to commit the domestic battery and that, contrary to his testimony, the touching of Hausler was neither loving nor gentle and was not a mistake. We conclude that, if admitted for these limited purposes in the domestic battery prosecution, Hausler's testimony about defendant's threats would have been relevant other-crimes evidence. See *Illgen*, 145 Ill. 2d at 365. In the prosecution for unlawful possession of a weapon by a felon, the evidence of defendant's threats may very well have been admissible to explain the timing of Hausler's reporting of the weapon and to establish defendant's constructive possession of the weapon. When the charges of unlawful possession

-12-

of a weapon by a felon are tried separately from the domestic battery charge, the trial court must conduct a proper balancing test. We emphasize that our discussion is confined to the specific evidence that was presented to the trial court and that we are not directing the trial court to admit any particular evidence at the new trials on remand.

¶ 65                                    C. Jury Instruction

¶ 66    Finally, defendant contends that the verdict was unreliable because the jury was not properly instructed on other-crimes evidence. Defendant argues that the trial court erroneously (1) failed to give limiting instructions when witnesses testified to uncharged conduct and (2) used jury instructions and verdict forms that did not distinguish between charged and uncharged conduct. Defendant notes that at no time during the trial did the court explain to the jury the difference between the charged conduct and the uncharged conduct. Alternatively, defendant makes an undeveloped claim that defense counsel rendered ineffective assistance where she failed to request proper instructions or to otherwise bring the errors to the court's attention.

¶ 67    We agree with defendant that the verdict was unreliable because, in light of the instruction error, the convictions might have been based on uncharged conduct, including the domestic violence incidents in December 2009 and March 2010, defendant's threats accompanying those incidents, and defendant's prior felony conviction. These errors compounded the joinder error and are reversible.

¶ 68    Jury instructions give the jurors the correct principles of law applicable to the facts so they can reach a correct conclusion according to the law and the evidence. *People v. Fuller*, 205 Ill. 2d 308, 343 (2002). In a criminal case, the applicable Illinois Pattern Jury Instruction "shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. July 1, 2006). In determining the adequacy of instructions, a reviewing court will consider all the instructions as a whole to ascertain if they fully and fairly cover the law. *People v. Housby*, 84 Ill. 2d 415, 433-34 (1981).

¶ 69    In this case, the State tendered the following instruction on other-crimes evidence:

    "Evidence has been received that the defendant has been involved in conduct other than those charged in the indictment.

    This evidence has been received on the issues of defendant's intent, motive, design, knowledge, absence of mistake, and propensity.

    It is for you to determine whether the defendant was involved in that conduct and if so, what weight should be given to this evidence on the issues of the defendant's intent, motive, design, knowledge, absence of mistake, and propensity."

¶ 70    Before trial, the trial court asked defense counsel whether she had any objection to the instruction or whether she would like it read before the other-crimes evidence was admitted. Counsel stated that she had no objection to the instruction but did not want it read when the evidence was introduced, because she feared that the instruction would confuse the jury.

¶ 71    When the State presented the stipulation that defendant had been previously convicted of a felony in Cook County, the trial court advised the jury that "[t]his information

concerning the agreement of these facts can be used by you like any other evidence in this case to come to your verdict." Thus, the court did not instruct the jury that defendant's status as a felon was to be considered for the limited purpose of determining his guilt or innocence on the charges of unlawful possession of a weapon by a felon, but rather that it could be considered for any relevant purpose, including propensity to commit domestic battery.

¶ 72    At the jury instruction conference, the trial court remarked that "you have to find out which statements would be for propensity." Defense counsel again said that she had no objection to the State's instruction and commented that any change to the instruction would confuse the jury. The court suggested that "if you were gonna try to spell it out the way it really actually is," then the instruction would state that "this and this and this is just for propensity and these things are for all the other issues." Defense counsel rejected the court's suggestion as too confusing for the jury and asked that the instruction be given as submitted. Before instructing the jury, the court remarked that "I think it probably could be reworked, but I think this is too complicated to do that." Defense counsel reiterated that she would not object to the instruction and reasoned that the court had already allowed the admission of the other-crimes evidence. The trial court gave the instruction, without modification, as tendered by the State and agreed to by defense counsel.

¶ 73    The agreement between the prosecution and defense counsel notwithstanding, we agree with defendant that the trial court committed reversible error in failing to give the jury a precisely tailored version of Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 3.14). IPI Criminal 4th No. 3.14 provides as follows:

"[1] Evidence has been received that the defendant[s] [(has) (have)] been involved in [(an offense) (offenses) (conduct)] other than [(that) (those)] charged in the [(indictment) (information) (complaint)].

[2] This evidence has been received on the issue[s] of the [(defendant's) (defendants')] [(identification) (presence) (intent) (motive) (design) (knowledge) (____)] and may be considered by you only for that limited purpose.

[3] It is for you to determine [whether the defendant[s] [(was) (were)] involved in [(that) (those)] [(offense) (offenses) (conduct)] and, if so,] what weight should be given to this evidence on the issue[s] of ____."

¶ 74    Moreover, the preferred practice is for the trial court to instruct the jury, not only at the close of the case, but also when other-crimes evidence is admitted, of the limited purpose for which it may consider the other-crimes evidence. *People v. Heard*, 187 Ill. 2d 36, 60-61 (1999) (citing *People v. Denny*, 241 Ill. App. 3d 345, 360-61 (1993)); Illinois Pattern Jury Instructions, Criminal, No. 3.14, Committee Note (3d ed. Supp. 1996).

¶ 75    The trial court abused its discretion in failing to tailor IPI Criminal 4th No. 3.14 based on the evidence presented, and that error compounded and amplified the joinder error. First, in the unlawful-possession-of-a-weapon-by-a-felon case, clearly the jury should not have considered for propensity the charged domestic battery, the two uncharged domestic violence incidents, or the threats that accompanied those uncharged incidents. Second, in the misdemeanor domestic battery case, the jury should not have been instructed that it could consider for propensity defendant's prior felony conviction, the threats defendant allegedly

-14-

made to Hausler[1], and the evidence of defendant's gun possession.

¶ 76    Defendant concedes that he did not object below to the trial court's alleged errors in instructing the jury and that, therefore, the issue is forfeited. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005) (both an objection at trial and raising the issue in a posttrial motion are necessary to preserve the issue for appellate review). However, under Illinois Supreme Court Rule 451(c) (eff. July 1, 2006), where a jury instruction suffers from a substantial defect, claims of error are not subject to forfeiture on appeal. An erroneous instruction constitutes a substantial defect, or plain error, when the instruction created a serious risk that the defendant was incorrectly convicted because the jury did not understand the applicable law, so as to threaten the fundamental fairness of the defendant's trial. *People v. Durr*, 215 Ill. 2d 283, 299 (2005). To prevail, the defendant need not prove that the error in the instruction actually misled the jury. *Herron*, 215 Ill. 2d at 193. "When there is error in a close case, we choose to err on the side of fairness, so as not to convict an innocent person." *Herron*, 215 Ill. 2d at 193. Plain error arises in two circumstances: (1) when the flawed instruction was provided in a case where the evidence was closely balanced or (2) when the flaw in the instruction is "grave" or so serious that it denied the defendant a substantial right and undermined the integrity of the judicial process. *Herron*, 215 Ill. 2d at 178-79. Here, regardless of the closeness of the evidence, the instruction error was so grave that it denied defendant a fair trial and undermined the integrity of the judicial process.

¶ 77    The State argues that the convictions must be affirmed because defendant invited the jury instruction error. Plain-error review is forfeited when a defendant invites the error. "[A] defendant's invitation or agreement to the procedure later challenged on appeal 'goes beyond mere waiver.' " *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)). Invited error is sometimes referred to as an issue of estoppel in that a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error. *Harvey*, 211 Ill. 2d at 385. To allow a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend notions of fair play, encourage defendants to become duplicitous (*Harvey*, 211 Ill. 2d at 385), and deprive the State of the opportunity to cure the alleged defect (*People v. Bush*, 214 Ill. 2d 318, 332 (2005)). Where the defendant invited the error, our supreme court has declined to address any related plain-error claim. See, *e.g.*, *People v. Patrick*, 233 Ill. 2d 62, 77 (2009).

¶ 78    That said, the concerns underlying the invited error rule are not present here. First, the prosecution introduced the flawed instruction and offered no suggestion for curing the defect, even when it was pointed out by the trial court. Second, defense counsel's conduct was not duplicitous. We acknowledge that counsel persistently declined the trial court's overtures to modify the instruction, but counsel's tactic was less an invitation of error than an attempt to mitigate jury confusion that could result from a convoluted instruction. Under these unique facts, granting defendant relief for the instruction error is not unfair to the State.

---

[1]Such an instruction on the threats as other-crimes evidence would be predicated on the trial court's determination that the threats were not admissible to show propensity under section 115-7.4.

¶ 79     Rather than taking the untenable position that the instruction accurately stated the law, the State argues that we should disregard defendant's claim of error because the prosecution and defense counsel agreed to use the flawed instruction at trial. To adopt the State's position would be to condone a grave error that prejudiced defendant's right to a fair trial and undermined the integrity of the judicial process, with the sole justification being that the prosecution and defense counsel stipulated to the error and the trial court grudgingly accepted the stipulation.

¶ 80     We recognize that the prosecution and defense counsel, especially, placed the trial court in a difficult position. The error in trying the domestic battery charge with the weapons charges did not manifest itself until it was time to instruct the jury. By then, it was too late to untangle the evidence to make it understandable for the jury. The court was left with three bad options: (1) use a simple instruction that misstated the law, (2) use an accurate instruction that was so convoluted that the jury likely could not follow it, or (3) declare a mistrial and start over with separate trials and precise instructions. At the attorneys' prodding, the court chose the first option; but in hindsight, the third option was the only way to cure the error. We acknowledge the trial court's predicament, but we hold that defendant must be granted new trials because the cumulative error in this case was so egregious.

¶ 81     Our holding that defense counsel did not invite the jury instruction error is further supported by *People v. Brown*, 319 Ill. App. 3d 89, 99 (2001), where the trial court used a flawed version of IPI Criminal 4th No. 3.14 such that the jury was not informed that the other-conduct evidence could be considered solely on the issues previously enumerated. The Appellate Court, Fourth District, held that the instruction "failed to convey the correct principles of law to the jury," which was reversible error even though the defendant did not object at trial or on appeal. *Brown*, 319 Ill. App. 3d at 99.

¶ 82     To the extent that certain other-crimes evidence might be admissible in the new, separate trials, the trial court may determine those purposes, depending on the specific evidence presented. We note that, as we are remanding the cause for separate trials on the weapons charges and on the domestic battery charge, no other-crimes instruction on the prior conviction will be necessary in the trial on domestic battery because the prior conviction would be inadmissible for any purpose in that trial.

¶ 83                        III. CONCLUSION

¶ 84     Our reversal of defendant's convictions raises the double jeopardy issue. The double jeopardy clause of the United States Constitution prohibits the State from having another opportunity to try a case unless it has in the first trial presented sufficient evidence to prove the defendant guilty beyond a reasonable doubt. *People v. Macon*, 396 Ill. App. 3d 451, 458 (2009). Thus, before remanding for a new trial, double jeopardy requires the appellate court to rule upon the sufficiency-of-the-evidence issue. *People v. Taylor*, 76 Ill. 2d 289, 309 (1979). We have carefully reviewed the record in the light most favorable to the prosecution and conclude that the evidence sufficiently supports the verdict beyond a reasonable doubt. Our determination, however, is not binding on retrial and does not indicate this court's opinion as to defendant's guilt or innocence.

¶ 85       For the reasons stated, we reverse defendant's convictions and remand the cause for new trials: one for domestic battery and one for the two counts of unlawful possession of a weapon by a felon.

¶ 86       Reversed and remanded with directions.