# Illinois Official Reports

## Appellate Court

---

## *People v. Johnson*, 2021 IL App (1st) 190567

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID JOHNSON, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-19-0567 |
| Filed | August 23, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-17523; the Hon. Domenica A. Stephenson, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Jonathan Pilsner, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Noah Montague, and Justin Erb, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE WALKER delivered the judgment of the court, with opinion.<br>Justice Hyman concurred in the judgment and opinion.<br>Justice Coghlan dissented, with opinion. |

**OPINION**

¶ 1        A jury found David Johnson guilty of first degree murder and aggravated discharge of a firearm. Johnson contends on appeal that the court erred by admitting into evidence a recording of a phone call Johnson made from jail and by failing to instruct the jury properly on the use of other-crimes evidence. We find the call admissible, but we find the trial court committed plain error by failing to instruct the jury on the limited purpose for which the court admitted the call into evidence. Because we find the evidence closely balanced and the erroneous instructions challenged the integrity of the judicial process, we reverse and remand for a new trial.

## I. BACKGROUND

¶ 2

¶ 3        At approximately 3:30 p.m. on May 24, 2014, police responded to a call and found Kenneth Anthony on the ground near 69th Street and Halsted Street, dead from a gunshot wound. Police arrested Toney Hill at the scene. Based on statements Hill made, police arrested Johnson three months later. A grand jury indicted Johnson for the murder of Anthony, for the attempted murder of Hill, and for aggravated discharge of a firearm.

¶ 4        At the jury trial, Hill testified that on May 24, 2014, he and Johnson were hanging out near 69th Street and Halsted Street with three friends Hill knew only by first name or nickname: Deante, Dave, and Fabo. Deante started fighting with Johnson and landed on top of Johnson before the others broke it up. According to Hill, "nobody really [won], they both fell to the ground and we broke the fight up." Hill walked with Johnson while others walked with Deante in the opposite direction. After Johnson left, Hill and some friends went to a nearby store. Anthony and Rashaun Hollins joined them outside on the street. Hill warned his friends when he saw Johnson and Marlon Kersh walking towards them. Johnson raised a gun and fired. Hill and his friends ran.

¶ 5        The prosecutor played several brief video recordings from store security cameras near the crime scene. One recording showed the backs of two black men as they walked past the store. Hill identified the men as Johnson and Kersh. Hill also identified two side views of the men as they walked past a second store's camera. He testified that a still shot extracted from the video showed Johnson.

¶ 6        Kenneth Bradley testified that he was with the group at 69th Street and Halsted Street when Deante fought with Johnson. Bradley said, "[Johnson] lost. He got beat up." Bradley testified, "[Johnson] mumbled something like he was coming back, you know what I mean. I don't know the exact words that he said, but he mumbled something." Bradley and Deante went to Bradley's home, and both returned to the scene when Bradley got a phone call about the shooting. A firearms expert testified for the prosecution that at least three different guns fired the 19 cartridges police found on the ground at the crime scene. No witness claimed to have seen a third gun or a third shooter at the scene.

¶ 7        Kimberly Hofsteadter, an investigator for the Department of Corrections, identified a compact disc as a collection of recordings of calls Johnson made from the jail. The prosecution asked the court to admit the phone calls into evidence as proof of Johnson's consciousness of

guilt. The court overruled Johnson's objection. The court accepted the CD into evidence and permitted the prosecution to play for the jury a recording of a call made on November 4, 2016.[1]

¶ 8 The record does not include a transcript of the call. The voices on the recording do not enunciate words very clearly. We accept the State's representation in its brief that Johnson, on the recording, said that his attorney wanted to talk to a witness, unnamed in the recording, "just in case they do get snatched." Johnson said, "make sure that on the 27th… send his a*** away. For real." The court had set the trial to begin on the 28th.

¶ 9 In the instruction conference, Johnson objected to a proposed instruction concerning Johnson's statements. The court overruled the objection and instructed the jury:

> "You have before you evidence that the Defendant made a statement relating to the offenses charged in the indictment. It is for you to determine whether the Defendant made the statement and, if so, what weight should be given to the statement. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made."

¶ 10 The jury asked the judge for a transcript of the phone call, and the court advised that no transcript was available. Subsequently, the jury found Johnson guilty of murder and aggravated discharge of a firearm during the murder, but not guilty of attempting to murder Hill. The court held a hearing on Johnson's posttrial allegations of ineffective assistance of counsel. The court denied the motion for a new trial and sentenced Johnson to 35 years for murder, plus 20 years for use of a firearm in the course of the murder, to be served consecutively to 6 years for aggravated discharge of a firearm, for a total sentence of 61 years. Johnson now appeals.

¶ 11                                            II. ANALYSIS

¶ 12 On appeal, Johnson contends that the trial court erred by admitting the phone call into evidence and by failing to instruct the jury about the limited use of defendant's statements. He also contends his attorney provided ineffective assistance by failing to offer an instruction on other-crimes evidence.

¶ 13 We note that defense counsel failed to preserve the issues of whether the trial court erred by admitting the phone call into evidence and failing to instruct the jury about the limited use of the statements. Defense counsel made objections at trial, but the objections were not preserved with a posttrial motion. To preserve an alleged trial error for appellate review, a defendant must raise an objection both at trial and in a written posttrial motion. *People v. Bush*,

---

[1]The parties cite the call in the record as exhibit 73. Exhibit 73 is the compact disc that includes 81 separate files of calls Johnson made from the jail. The file identification tags do not indicate the date or time of the calls. Thus, to find the specific call the prosecution used in this case, this court would need to listen to all 81 files—and, according to other evidence admitted based on Hofsteadter's testimony, some of the calls lasted more than 30 minutes. We heard the call not as part of exhibit 73 but from a separate compact disc the prosecution prepared for the jury. That disc includes only one phone call, plus the footage used at trial from the security cameras. The citation to exhibit 73 appears to comply with supreme court rules for citations to the record. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). We ask the supreme court to require citations to specify the file designation for any file on a CD or similar device and to specify the minute within the file that includes the referenced material.

214 Ill. 2d 318, 333 (2005). In *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005), our supreme court held that "the plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." Under the first prong, the defendant must prove "prejudicial error," by showing both that there was plain error and that "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Id.* at 187. Under the second prong, the defendant must prove that there was plain error and that "the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id.* Prejudice to the defendant is presumed because of the importance of the right involved, " '*regardless* of the strength of the evidence.' " (Emphasis in original.) *Id.* In both instances, the burden of persuasion remains with the defendant.

¶ 14                                          A. Phone Call

¶ 15        Generally, we review the trial court's evidentiary rulings for abuse of discretion. *People v. Reese*, 2017 IL 120011, ¶ 75. Because Johnson's motion for a new trial did not preserve his objection to the ruling on the phone call, we review the issue for plain error. *Id.* ¶ 68. The first step under either prong of the plain-error doctrine is to ascertain whether a clear or obvious error occurred at trial. *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 16        "Evidence of other crimes may *** be admitted *** as evidence to show a consciousness of guilt." *People v. Abernathy*, 402 Ill. App. 3d 736, 749 (2010). "An attempt by a defendant to intimidate a witness, though a separate offense, is properly admissible for this purpose ***." *People v. Woods*, 122 Ill. App. 3d 176, 179 (1984).

¶ 17        Johnson contends that his unclear remarks about an unidentified person do not prove an intent to intimidate or otherwise prevent a witness from testifying, especially because no evidence shows that the unidentified potential witness ever learned that Johnson asked someone to "send his a*** away. For real."

¶ 18        To show that a defendant attempted to tamper with a witness in violation of section 1512(a)(2)(A) of Title 18 of the United States Code (18 U.S.C. § 1512(a)(2)(A) (2012)), the prosecution must show the defendant attempted to use a threat of physical force to curtail a witness's participation in a trial. *United States v. England*, 507 F.3d 581, 588 (7th Cir. 2007). "[T]he statute prohibits expressing an intent to inflict injury on another through physical force. An 'expression' only requires that someone—not necessarily the intended victim—perceive it." (Emphasis omitted.) *Id.* at 589. "If a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury." (Internal quotation marks omitted.) *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017).

¶ 19        We find that in the context of the discussion about witnesses at the upcoming trial, the jury could conclude from the phone conversation that Johnson intended to make a witness unavailable. The evidence of an effort to tamper with a witness "show[s] consciousness of guilt of the crime at issue and is admissible in a criminal case." *People v. Spraggins*, 309 Ill. App. 3d 591, 593 (1999); see *Woods*, 122 Ill. App. 3d at 179. We find no error, and we hold that the trial court did not abuse its discretion by admitting the phone call into evidence.

¶ 21    Over Johnson's objection, the court instructed the jurors they could consider the phone call "a statement relating to the offenses charged" and that "[i]t is for [the jury] to determine whether the Defendant made the statement and, if so, what weight should be given to the statement." The State agrees with Johnson that the court erred by giving this instruction, in part because the utterances in the phone call, like the mumbled remark that may have indicated Johnson intended to return, do not qualify as statements. Johnson made no claims about matters of fact. See *People v. James*, 2017 IL App (1st) 143391, ¶ 119. The parties agree that the court should instead have given the other-crimes instruction, Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 3.14). Johnson agrees with the State that Johnson's attorney failed to preserve the objection to the erroneous instruction and the failure to give the correct instruction. We review the issue only for plain error or as proof of ineffective assistance of counsel. *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 76.

¶ 22    IPI Criminal 4th No. 3.14, modified to apply to the facts here, directs the jurors:

> "Evidence has been received that the defendant has been involved in an offense other than those charged in the indictment. This evidence has been received on the issue of the defendant's consciousness of guilt and may be considered by you only for that limited purpose.
>
> It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issue of consciousness of guilt."

¶ 23    Unlike the instruction the court gave, IPI Criminal 4th No. 3.14 emphasizes the limitation on the use of the evidence of another offense, here, only to show consciousness of guilt. When courts admit evidence of other crimes, jurors might infer "that, because a person committed other crimes or bad conduct, he is more likely to have committed the crime charged." *People v. Brown*, 319 Ill. App. 3d 89, 99 (2001). The law distrusts this inference, and the possibility of the improper inference remains a major concern even when the evidence of other offenses bears on issues like *modus operandi*, intent, identity, motive, or consciousness of guilt. *Id.* "Accordingly, instructing the jury on the limited purpose for which such evidence can be considered is imperative." *Id.* "Moreover, the preferred practice is for the trial court to instruct the jury, not only at the close of the case, but also when other-crimes evidence is admitted, of the limited purpose for which it may consider the other-crimes evidence." *Johnson*, 2013 IL App (2d) 110535, ¶ 74.

¶ 24    The *Johnson* court used plain error analysis in similar circumstances. The court stated:

> "Defendant concedes that he did not object below to the trial court's alleged errors in instructing the jury and that, therefore, the issue is forfeited. [Citation.] However, under Illinois Supreme Court Rule 451(c) (eff. July 1, 2006), where a jury instruction suffers from a substantial defect, claims of error are not subject to forfeiture on appeal. An erroneous instruction constitutes a substantial defect, or plain error, when the instruction created a serious risk that the defendant was incorrectly convicted because the jury did not understand the applicable law, so as to threaten the fundamental fairness of the defendant's trial. [Citation.] To prevail, the defendant need not prove that the error in the instruction actually misled the jury. [Citation.] 'When there is error in a

close case, we choose to err on the side of fairness, so as not to convict an innocent person.' *Herron*, 215 Ill. 2d at 193. Plain error arises in two circumstances: (1) when the flawed instruction was provided in a case where the evidence was closely balanced or (2) when the flaw in the instruction is *** so serious that it denied the defendant a substantial right and undermined the integrity of the judicial process." *Id.* ¶ 76.

¶ 25 The jury's specific request for a transcript of the phone call indicates the importance to the jury of the phone call. See *People v. Shaw*, 186 Ill. 2d 301, 324 (1998); *People v. Autman*, 58 Ill. 2d 171, 176-77 (1974). The instruction error here failed to limit the jurors' consideration of the evidence of witness tampering. If the evidence is closely balanced, the instruction error here constitutes plain error. *Johnson*, 2013 IL App (2d) 110535, ¶ 76.

¶ 26 The prosecution relied principally on Hill's testimony. Bradley corroborated the testimony about a fight between Johnson and Deante and added something like a motive as Bradley said Deante "beat up" Johnson. Bradley did not see Johnson again after Johnson left the fight. The video recordings provide limited corroboration for Hill's testimony, as the recordings show that two men came from the direction described by Hill. The recordings show only blurry images, insufficient to identify facial characteristics of the two men who walked past the cameras. The trier of fact had no sufficient basis for identifying, on its own, the persons seen in the recordings.

¶ 27 The prosecution presented no evidence tying any gun or ballistic evidence to Johnson. Johnson did not confess, and no physical evidence, apart from the equivocal images recorded by security cameras, showed Johnson at the crime scene. Johnson had no motive to injure Anthony, who had not even witnessed the fight between Johnson and Deante. We find the evidence closely balanced (see *People v. Gonzalez*, 2018 IL App (1st) 152242, ¶ 96), and therefore we find plain error under the first prong of plain-error review.

¶ 28 Mistaken jury instructions may constitute plain error under the second prong of plain-error review if the mistake "creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *People v. Sargent*, 239 Ill. 2d 166, 191 (2010). The court in Johnson, found that an instructional mistake like the mistake committed here constituted plain error under the second prong of plain-error review. In *Johnson*, 2013 IL App (2d) 110535, ¶ 1, prosecutors charged the defendant with domestic battery for hitting Hausler in April 2010. At the trial, Hausler testified that the defendant also struck her in December 2009 and March 2010. *Id.* ¶ 10. She said she did not report those incidents to police because the defendant "told Hausler that, if she called the police, there would be a shootout and he would kill himself, her, and the police." *Id.* ¶ 20. The trial court instructed the jurors that they could "consider the evidence of defendant's 'conduct other than those charged in the indictment,' for purposes of 'intent, motive, design, knowledge, absence of mistake, and propensity.' " *Id.* ¶ 35.

¶ 29 On the appeal from the conviction for domestic violence, the appellate court held that the trial court properly admitted evidence of the prior threats to show the defendant's intent and lack of mistake. However, the court also held, "the jury should not have been instructed that it could consider for propensity *** the threats defendant allegedly made to Hausler." *Id.* ¶ 75. Although the defendant failed to object to the mistaken instruction, the appellate court held

that the trial court committed "a grave error that prejudiced defendant's right to a fair trial and undermined the integrity of the judicial process." *Id.* ¶ 79.

¶ 30 We find the instructional error here similarly permitted the jurors to consider the threats as evidence of a propensity to commit crimes, and therefore the error "denied the defendant a substantial right and undermined the integrity of the judicial process." *Id.* ¶ 76. We find plain error under the second prong of plain-error review. We hold that the plain error the trial court committed by failing to correctly instruct the jury on the limited use of evidence for the crime of witness tampering is so misleading and prejudicial that it requires reversal and remand for a new trial.

¶ 31                                   III. CONCLUSION

¶ 32 The erroneous instruction concerning a defendant's statements permitted the jury to infer that Johnson committed murder from evidence that he committed another offense of attempting to prevent a witness from testifying. The court's instructions did not limit the jury's use of the other-crimes evidence to prove Johnson was conscious of his guilt. Because of the closely balanced evidence and because the error undermined the integrity of the judicial process, we reverse the convictions and remand for a new trial.

¶ 33      Reversed and remanded.

¶ 34      JUSTICE COGHLAN, dissenting:

¶ 35 Although the trial court erred by giving IPI Criminal 4th No. 3.06-3.07, pertaining to defendant David Johnson's "statement related to the offenses charged in the indictment," and further erred by not giving IPI Criminal 4th No. 3.14, regarding the limited purpose for which other-crimes evidence can be used, Johnson forfeited his claim of error by failing to raise it in his posttrial motion. Moreover, Johnson cannot meet either prong of the plain-error test since the evidence against him was not closely balanced and the error did not undermine the fundamental fairness of his trial. Under these circumstances, I would decline to apply the plain-error exception to the forfeiture doctrine in this case.

¶ 36 Toney Hill's testimony that Johnson was the shooter was uncontradicted at trial, and his identification bears multiple indicia of reliability. Johnson was not a stranger but a friend whom Hill knew by the nickname "Little Legs." See *People v. Barnes*, 364 Ill. App. 3d 888, 895 (2006) ("The persuasiveness of identification testimony is strengthened by the witness's prior acquaintance with the accused."); *People v. Petermon*, 2014 IL App (1st) 113536, ¶ 32 (despite brevity of shooting incident, witness's identification was bolstered where he recognized the defendant); *People v. Sullivan*, 366 Ill. App. 3d 770, 783 (2006) (same). When Hill exited the corner shop and saw Johnson and Marlon Kersh walking up Halsted Street toward him, he had sufficient time to cross the street and warn his other friends. Only later, as Johnson drew closer, did Hill observe that he was armed. There is no evidence that Hill's initial identification of Johnson, which occurred during daylight hours, was in any way impaired. Mere hours after the incident, Hill spoke to police and viewed a photo array from which he positively identified Johnson as one of the two shooters.

¶ 37    In addition, Hill's identification of Johnson is corroborated by Kenneth Bradley, who witnessed the fight between Johnson and Deante and heard Johnson threatening to "com[e] back." Hill's testimony was also corroborated by the surveillance video of the murder, which shows the events unfolded exactly as Hill testified at trial. Moreover, Johnson's consciousness of guilt is evidenced by his jailhouse phone call in which he explained that his trial was definitely taking place on the 28th, expressed concern that an unknown witness would be "snatched," and then instructed the person he called to "make sure on the 27th you send his ass away for real."

¶ 38    To determine whether the evidence at trial is closely balanced, "a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. A "commonsense assessment" of the evidence adduced at this trial establishes that it was not closely balanced.

¶ 39    As to the erroneous jury instruction given in this case, it is well established that "[a] fair trial *** is different from a perfect trial. [Citation.] It is the fairness of the trial, not the perfection of the trial, that the two prongs of plain error aim to protect." (Internal quotation marks omitted.) *People v. Ely*, 2018 IL App (4th) 150906, ¶ 19. Plain error is "a narrow and limited exception to the general waiver rule" (internal quotation marks omitted) (*People v. Herron*, 215 Ill. 2d 167, 177 (2005)), and in particular, the second prong requires "a systemic error which serves to erode the integrity of the judicial process and undermine the fairness of the defendant's trial." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010).

¶ 40    The instructional error at issue in this case does not rise to that level. In context, it was clear that the phone call was not being offered as evidence of Johnson's general propensity to commit crimes but as evidence of his consciousness of guilt in trying to "send *** away" a potential witness the day before his trial began.

¶ 41    *People v. Johnson*, 2013 IL App (2d) 110535, upon which the majority relies, is readily distinguishable. There, defendant was charged with domestic battery and unlawful possession of a weapon by a felon. We held that defense counsel was ineffective for failing to object to joinder of these offenses since joinder was not warranted under the facts and there was no strategic reason for counsel's acquiescence. *Id.* ¶¶ 53, 55. This error was "compounded and amplified" by the trial court's erroneous instruction that the jury could consider defendant's prior bad acts (multiple domestic violence incidents and threats made to the victim) for propensity. *Id.* ¶¶ 69, 75. The totality of these circumstances constituted second-prong plain error. *Id.* ¶ 76.

¶ 42    Here, by contrast, the jury instruction did not "compound[ ] and amplif[y]" any prior error, insofar as the phone call was properly introduced to show consciousness of guilt, and the instruction did not explicitly invite the jury to consider the phone call as propensity evidence. Thus, the error in this case does not rise to the level of the error in Johnson.

¶ 43    Accordingly, I respectfully dissent and would affirm Johnson's murder conviction.