2013 IL App (2d) 110663
No. 2-11-0663
Opinion filed January 3, 2013

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10-CM-854 |
| DIRK W. DeSOMER, | ) ) | Honorable Robert J. Morrow, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Zenoff and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant, Dirk W. DeSomer, was convicted of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2010)) and resisting a peace officer (720 ILCS 5/31-1(a) (West 2010)).  Defendant appeals, contending that the trial court erred by admitting under the excited-utterance exception to the hearsay rule a statement by defendant's girlfriend, the alleged victim, that defendant was beating her.  We affirm.

¶ 2    At trial, Oswego police officer Patrick Wicyk testified that at about 1:30 a.m. on August 12, 2010, he was on Madison Street responding to a call unrelated to this case.  He heard a loud banging, as if someone were slamming a door or being slammed into a door.  A short time later, Wicyk saw

a white female in the street, running and screaming that she needed help because "her boyfriend was beating her." The woman identified herself as Patricia Langan (the complaint identifies the victim as Patricia Lang). Wicyk approached her and, in the light of his flashlight, saw that she was "visibly disturbed and shaking. Her chest appeared to be red as if she was in—it looked like to me [she] appeared to be in some type of physical confrontation in the past couple of minutes."

¶ 3   Over defendant's objection, the trial court allowed Wicyk to testify to what the woman told him. The court ruled that Wicyk's description of Langan as "disturbed and shaking" rendered her subsequent statement admissible as an excited utterance. Wicyk then testified that Langan "continued to say that the male inside the house was beating her and wouldn't allow her out of the house." Langan had no shoes and "seemed to be visibly disturbed."

¶ 4   After 15 or 20 minutes, Wicyk and another officer, Kenneth Foote, were able to get into the house, which Wicyk described as being in "complete disarray" as if "there was some type of physical confrontation that occurred there." The officers found defendant in a bedroom, halfway under a bed. He appeared to be intoxicated. When asked what had occurred that night, defendant replied "Nothing." When pressed, he elaborated that his girlfriend was outside "yelling and screaming like she does on multiple occasions stating that she's in duress." Defendant identified Langan as his girlfriend.

¶ 5   After going back outside to speak to Langan, Wicyk returned to the house and arrested defendant. He and Foote described how the arrest required them to push him onto a bed and handcuff him.

¶ 6     Defendant testified that the officers entered his house and asked him why Langan was outside screaming and to explain the red marks on her chest. He explained that she had gotten sunburned while riding her bicycle.

¶ 7     The trial court found defendant guilty of resisting a peace officer and of domestic battery based on conduct of an insulting or provoking nature. The court found defendant not guilty of domestic battery based on causing bodily harm. The court explained:

"On the domestic battery, I'm going to find the defendant guilty of domestic battery, insulting or provoking contact. I think the condition of the woman that was observed supports that."

¶ 8     The court stated that it was doing "defendant a favor" by finding him not guilty of domestic battery based on causing bodily harm, because there was "probably enough case law to sustain physical injury with a red mark." The court sentenced defendant to 12 months' conditional discharge. Defendant did not file a posttrial motion, but he filed a timely notice of appeal.

¶ 9     Defendant contends that the trial court erred by permitting Wicyk to testify that Langan said that defendant was beating her. He maintains that the statement was hearsay and that the excited-utterance exception did not apply.

¶ 10    Initially, defendant acknowledges that he did not file a posttrial motion, which generally would result in forfeiture of the issue. However, he contends that we should consider the issue as plain error. Under the plain-error doctrine, a reviewing court is permitted to consider unpreserved error under the following two scenarios:

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial

process, regardless of the closeness of the evidence." *People v. Sargent,* 239 Ill. 2d 166, 189 (2010).

¶ 11    "The defendant bears the burden of persuasion under both prongs of the plain-error analysis." *People v. Wigman,* 2012 IL App (2d) 100736, ¶ 31. "The first step in the plain-error analysis is to determine whether error occurred at all." *Id.* The parties agree that Langan's statement to Wicyk was hearsay. The trial court admitted it pursuant to the excited-utterance exception to the hearsay rule. Defendant contends that this was error.

¶ 12    For a statement to be admissible under the excited-utterance exception, also known as the spontaneous-declaration exception, there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, an absence of time for the declarant to fabricate a statement, and a statement relating to the circumstances of the occurrence. Ill. R. Evid. 803(2) (eff. Jan. 1, 2011); *People v. Sutton,* 233 Ill. 2d 89, 107 (2009); *People v. Williams,* 193 Ill. 2d 306, 352 (2000). Courts use a totality-of-the-circumstances analysis to decide whether a statement is admissible under the excited-utterance exception. *Williams,* 193 Ill. 2d at 352. Courts consider several factors, including the passage of time, the declarant's mental and physical condition, the nature of the event itself, and whether the statement is in the declarant's self-interest. *Sutton,* 233 Ill. 2d at 107. The time that may pass without affecting the admissibility of a statement varies greatly; the critical inquiry is "whether the statement was made while the excitement of the event predominated. [Citations.]" (Internal quotations marks omitted.) *Id.* at 107-08. "The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion." *People v. Tenney,* 205 Ill. 2d 411, 436 (2002).

¶ 13    Here, the trial court could reasonably conclude that Langan's statement to Wicyk was indeed spontaneous. Wicyk encountered Langan running and screaming in the street at 1:30 a.m. She was

visibly upset and shaking (see *People v. Dominguez*, 382 Ill. App. 3d 757, 769 (2008) (admitting as excited utterance statement by declarant who was crying and hysterical)) and had a red mark on her chest consistent with having been involved in an altercation within the past few minutes. Moreover, she made the statement spontaneously, apparently to the first person she encountered, rather than in response to questioning. See *People v. Smith*, 152 Ill. 2d 229, 260 (1992) (in affirming admission of statement as excited utterance, court found significant that declarant made statement to first person she saw). Under these circumstances, the trial court did not err in admitting the statement pursuant to the excited-utterance exception.

¶ 14    Defendant makes several arguments in support of his contention that admitting the evidence was indeed an abuse of discretion. He contends that there was no proof of the startling event other than the statement itself. In other words, other than Langan's statement that defendant was beating her, there was no evidence that such a beating took place. The State responds that, although there must be independent proof of the startling occurrence, the circumstantial evidence here was sufficient to establish that an altercation took place. We agree.

¶ 15    While the exciting event cannot be proved solely by the statement itself (*People v. Babbington*, 286 Ill. App. 3d 724, 736 (1997)), circumstantial evidence of the event is sufficient (*People v. Leonard*, 83 Ill. 2d 411, 419 (1980)). "[I]t is sufficient if it appears inferentially that the declarant personally observed such matters and that there is nothing to make a contrary inference more probable." *People v. Poland*, 22 Ill. 2d 175, 183 (1961). Here, circumstantial evidence corroborated Langan's statement. When Wicyk encountered Langan, she was visibly disturbed and shaking. He saw on her chest a red mark consistent with "some type of physical confrontation in the past couple of minutes." Upon entering the house, he observed that it was in disarray, as if "some type of physical confrontation *** occurred there." The officers found defendant partly under a bed,

leading to the inference that he was trying to hide. When asked, he initially denied that anything had occurred. His trying to hide and evasive answers are consistent with consciousness of guilt. In short, there was sufficient circumstantial evidence to establish the startling event.

¶ 16    Defendant postulates other explanations for these circumstances. He notes that Wicyk did not claim to be familiar with the home's interior and that perhaps it was constantly in a state of disarray. He further speculates that Langan was not beaten but was angry at defendant for some other reason and decided to falsely accuse him to get back at him. The short answer is that drawing such inferences from the evidence is the province of the fact finder (here, the trial court) and we cannot say that the court's refusal to draw these inferences was unreasonable. The court was not required to find, for example, that Langan was angry with defendant for some other reason and so, at 1:30 in the morning, decided to run out of the house barefoot, feign being disturbed and shaking, and loudly accuse defendant of beating her on the off chance that some passerby might hear her and contact the police.

¶ 17    Defendant further objects that Wicyk's conclusions about a "physical confrontation" having occurred recently seemed calculated to lead the trial court to that result. That may be, but defendant did not object to these characterizations and thus the trial court could give them the appropriate weight.

¶ 18    Defendant further notes that the passage of time is one of the key factors in the admissibility of a statement as an excited utterance and, here, there was no proof of when the startling event occurred. We agree with the State, however, that the precise amount of time between the occurrence and the statement is not critical. Rather, "[t]he time factor has been described as an 'elusive' factor, 'whose significance will vary with the facts of each case.' " *Williams*, 193 Ill. 2d at 353 (quoting *People v. House*, 141 Ill. 2d 323, 382 (1990)). The ultimate issue is whether the statement was made

while the excitement of the event predominated. *People v. Gwinn*, 366 Ill. App. 3d 501, 518 (2006). Thus, in *People v. Stiff*, 391 Ill. App. 3d 494 (2009), the reviewing court held that the trial court erred by excluding a statement, even though it was not known how much time had passed since the event (*id.* at 504), noting that " '[i]t is not the time element that controls, but the existence or lack of spontaneity in the light of the surrounding circumstances that is determinative.' " *Id.* at 503 (quoting *People v. Parisie*, 5 Ill. App. 3d 1009, 1028 (1972)).

¶ 19    Here, although we do not know precisely when the beating occurred, the trial court could reasonably find that Langan was still influenced by the "excitement of the event" when she made her statement to Wicyk. The officer testified that Langan was running and screaming in the street. On closer examination, she appeared "visibly disturbed and shaking." Wicyk testified without objection that she appeared to have been in a physical confrontation "in the past couple of minutes." Thus, the trial court could reasonably conclude that the beating happened within a few minutes and that, regardless of the precise time, Langan was still excited by it when she made her statement. Defendant points to no evidence supporting a contrary inference but, as noted, relies on speculation about some other motive for the statement.

¶ 20    The judgment of the circuit court of Kendall County is affirmed.

¶ 21    Affirmed.