2020 IL App (2d) 180229
No. 2-18-0229
Opinion filed September 28, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CM-114 |
| LAWRENCE RICKY BUSCH, | ) ) | Honorable John F. McAdams, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices McLaren and Bridges concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, the defendant, Lawrence Ricky Busch, was convicted of two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2016)) and sentenced to 90 days in jail and 24 months of probation. On appeal, the defendant argues that he was deprived of a fair trial because the trial court improperly admitted hearsay statements made by the alleged victim, Melissa Scholl, who did not testify at trial. We reverse and remand for additional proceedings.

¶ 2                                I. BACKGROUND

¶ 3    On March 7, 2017, the State charged the defendant with two counts of domestic battery and one count of interfering with the reporting of domestic violence (720 ILCS 5/12-3.5 (West 2016)). The charges alleged that on March 6, 2017, the defendant knowingly caused bodily harm

to Scholl by striking her body with a belt and hitting her in the face. The charges further alleged that the defendant attempted to prevent Scholl from calling 911.

¶ 4                                        A. Pretrial Proceedings

¶ 5       On October 25, 2017, the defendant's case was set for a bench trial on December 20, 2017. Thereafter, the Kane County Sheriff's Department made three unsuccessful attempts to personally serve Scholl with a subpoena to appear in court on the trial date. On December 7, 2017, the sheriff's department provided Scholl with abode service at Hesed House, a homeless shelter in Aurora where she occasionally resided. The sheriff's department's notes regarding its attempts to serve Scholl included the following comments: (1) the "last time [Scholl] was here was last night," (2) she "may or may not show up," (3) her presence was "hit or miss," and (4) she "is homeless [and] comes and goes from the shelter."

¶ 6       On December 19, 2017, the day before the trial was to begin, the State filed a motion to continue due to its inability to contact Scholl. The State also indicated that it wanted additional time to contact more witnesses. Over defense counsel's objection, the trial court granted the motion to continue and set the trial for January 17, 2018.

¶ 7       On January 2, 2018, Scholl was personally served and subpoenaed to appear at trial on January 17, 2018.

¶ 8                                        B. Bench Trial

¶ 9       Before the trial began, the State informed the trial court that, under section 115-10.2a of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.2a (West 2016)), Scholl was unavailable to testify and, therefore, it would seek to introduce her prior statements through other witnesses. The trial court agreed that Scholl was an unavailable witness "who ha[d] been served, refused to come to court, despite a court order to do so, and [that] there have been prior attempts

by the Kane County Sheriff's Department to have her served." The trial court concluded that Scholl's persistent refusal to testify satisfied the unavailability as a witness requirement under section 115-10.2(c) of the Code (725 ILCS 5/115-10.2(c) (West 2016)).

¶ 10     At trial, the State presented a recording of a 911 call that was made after the crimes occurred and testimony of Scholl's statements to law enforcement officers, Hesed House employee Debbie Harrington, and Hesed House resident Cat Wysocki.

¶ 11                           1. Scholl's Statements to the 911 Operator

¶ 12     Harrington, a 16-year employee of Hesed House, testified that on March 6, 2017, shortly before 11 a.m., an unidentified Hesed House guest told her that someone needed help outside. Harrington went outside and spoke to Scholl, who was sitting at a picnic table under a canopy. It seemed to Harrington as if something traumatic had happened to Scholl, because she was "shaking quite badly[,]" it appeared that it "was very hard for her to sit," she was crying, and was unable to put a sentence together.

¶ 13     Harrington asked Scholl if she needed an ambulance, but Scholl responded that she did not want one. Harrington then called 911 because she believed that "it was obvious a traumatic event had happened to" Scholl and Scholl needed help. Harrington called even though Scholl had not asked her to.

¶ 14     When the State asked Harrington what Scholl said to the 911 operator, defense counsel objected on the grounds of both testimonial hearsay and ordinary hearsay, arguing that when the 911 call was made Scholl was not under an imminent threat that required an immediate response. The trial court disagreed, finding that Scholl's hearsay statement was admissible because it constituted an excited utterance. The trial court explained that Scholl was "still within the clutches of the traumatic event to allow it to be admissible as an exception to the hearsay rule[.]"

¶ 15    Harrington then testified that Scholl told the 911 operator that she had been in a motel and that she was beaten with a belt. Harrington could not remember which motel Scholl named to the operator. Harrington testified that Scholl told the operator that the defendant was the person who injured her.

¶ 16    The trial court then, over defense counsel's objection, admitted into evidence the call to the 911 operator. The trial court again found that Scholl's statement to the 911 operator was an excited utterance.

¶ 17    In the recording of the 911 call, the operator asked Scholl a series of questions. When the operator asked what happened, Scholl responded that she had been beaten with a belt all night. After the operator asked who had beaten her, Scholl identified the defendant and said that he was staying at the Council Court Motel in Room 11. When asked if she needed an ambulance, Scholl responded, "No, no, I just want to report it." Scholl informed the operator that, after she had started walking, a "guy" saw her crying and drove her to Hesed House. When asked by the operator if the defendant had been drinking, had used drugs, had weapons, or had a car, Scholl responded with "no." The operator then informed Scholl that they would send an officer to talk with her before going to Council Court to talk with the defendant.

¶ 18    After the 911 call, Harrington took Scholl into an office at Hesed House to wait for the police.

¶ 19        2. Scholl's Statements to Harrington in the Office After the 911 Call

¶ 20    While they waited for the police, Harrington asked Scholl what happened. Scholl lifted up the back of her shirt and revealed red welts. Scholl told her that the defendant had caused those injuries with a belt. Scholl again refused an ambulance. Harrington had no further conversation

with Scholl before the police arrived. Defense counsel objected to Harrington's testimony, but the trial court found that it was admissible pursuant to section 115-10.2 of the Code.[1]

¶ 21                        3. Scholl's Statements to Wysocki

¶ 22    Wysocki testified that she saw Scholl walking up some stairs at Hesed House around 11 a.m. on March 6, 2017. Wysocki stated that Scholl was walking "very gingerly" as if she "fell or got hit or something" and that "her eyes were all puffy, and she had been crying." Over defense counsel's objection, Wysocki testified that Scholl told her that the defendant had whipped her with a belt. About an hour after she first talked to Scholl, Wysocki talked to her again. Scholl lifted up her shirt and asked Wysocki how it looked. Wysocki observed red welts and lines on Scholl's back. Scholl told her that they were "from the belt."

¶ 23                        4. Testimony of Law Enforcement Officers

¶ 24    Officer John Collins of the Kendall County Sheriff's Office testified that, around 11 a.m. on March 6, 2017, he went to Hesed House in response to a domestic battery report. He spoke with Scholl, who appeared to be crying and upset, in a private room. He observed several red marks on her arms and injuries to her legs, back, and lip. Scholl was moving slowly and seemed to be in pain. She appeared to be intoxicated, as she smelled of alcohol and her eyes were bloodshot and glassy. Scholl told him that she received a ride to Hesed House from either a friend or a random person.

¶ 25    During the course of his investigation, Officer Collins asked Scholl to write a statement describing the incident that caused her injuries. The State moved to admit the written statement

---

[1] Later, the State clarified that it was relying not on section 115-10.2 but on section 115-10.2a, as it did in its pretrial arguments.

on the ground that it was admissible under the unavailability-of-the-witness exception to the hearsay rule, pursuant to section 115-10.2a, and, further, that the statement was not testimonial. The trial court sustained the defense counsel's objection, finding that the written statement was testimonial and made for the purpose of furthering criminal prosecution, thereby violating the confrontation clause of the sixth amendment to the United States Constitution (U.S. Const., amend.VI). Thus, the written statement was not admitted at trial.

¶ 26   Officer Collins also testified that he went to the Council Court Motel to speak with the defendant. The defendant, who smelled of alcohol, was angry and upset. The defendant stated that Scholl, who had been living with him since November 2016, had cheated on him.

¶ 27   Officer Rose O'Brien from the Aurora Police Department testified that she photographed Scholl's injuries on March 6, 2017. She observed more than 100 marks on Scholl's body. The photographs, which were admitted into evidence, depict red and black and blue marks to Scholl's arms, legs, torso, and back.

¶ 28               5. Testimony of Clint Patterson and the Defendant

¶ 29   The defendant testified that, on March 5, 2017, around 5 p.m., he and Scholl, who had been living with him for about five months, went to Clint Patterson's room in Unit 12 to drink beer. They each had about three beers. The defendant and Scholl returned to their room between 7 p.m. and 8:30 p.m. and went to sleep. At 11 p.m., he woke up alone. He went to Patterson's room looking for Scholl, but she was not there. He did not look for her further because neither he nor Scholl had a car. Soon thereafter, he received a call from a man saying that he was bringing Scholl back to the motel. Believing that Scholl was cheating on him, the defendant told the man that he should keep her.

¶ 30     The defendant stated that Scholl returned to the room around 1 a.m. on March 6, 2017. She appeared to be drunk. He told her that she could sleep on the floor that night but that she could no longer stay with him. She left about 15 minutes later, and he never saw her again. The defendant denied causing any bruises to or making any physical contact with Scholl on the evening of March 5 or in the morning of March 6.

¶ 31     Patterson testified that the Council Court Motel was an old building and that he could hear sound coming through the wall he shared with the defendant. He did not hear screams or anything else on the night at issue that raised his suspicion. He did hear the defendant tell Scholl to leave at some point during the night, but he could not narrow down the time.

¶ 32                              C. The Decision and the Sentence

¶ 33     At the close of trial, both the State and the defendant presented their closing arguments. The trial court reserved its ruling on a decision in order to revisit its finding on whether Scholl was unavailable under section 115-10.2 of the Code (725 ILCS 5/115-10.2 (West 2016)), stating that "the guilt or innocence of the defendant relies very heavily on the admissibility or inadmissibility of those out-of-court statements." At that point, the State clarified for the trial court that it was relying on section 115-10.2a of the Code, not section 115-10.2. The trial court ordered both parties to conduct research into both statutory hearsay exceptions.

¶ 34     On February 1, 2018, following a hearing, the trial court found that Scholl's statements were admissible pursuant to section 115-10.2a. The trial court then found the defendant guilty of the two counts of domestic battery. The trial court explained that Harrington's testimony was "very credible" and that the "facts and circumstances that surrounded the statements by the victim, the hearsay statements, were reliable." The trial court acquitted the defendant of the one count of interfering with the reporting of domestic violence.

¶ 35    Following the denial of the defendant's motion for a new trial, the trial court sentenced the defendant to 90 days in jail and 24 months' probation.  The defendant thereafter filed a timely notice of appeal.

¶ 36                                    II. ANALYSIS

¶ 37    On appeal, the defendant argues that, because Scholl did not testify at trial, the trial court erred in admitting her Scholl's out-of-court statements.  The defendant contends that, because the entirety of the State's case was based on Scholl's alleged statements, the trial court's improper admission of those statements deprived him of a fair trial.  Specifically, the defendant contends that the following evidence should not have been admitted: (1) the 911 recording, (2) Harrington's testimony about Scholl's statements to the 911 operator, (3) Harrington's testimony about Scholl's statements to Harrington in the office after the 911 call, and (4) Wysocki's testimony about Scholl's statements to her.

¶ 38    Although the trial court expressed confusion as to whether section 115-10.2 or section 115-10.2a of the Code applied to the case, we believe that it is clear that section 115-10.2a applies.  Section 115-10.2a allows for the admission of prior statements in domestic violence prosecutions.  Section 115-10.2a(a) states, in pertinent part, that a statement made by an individual, which is "not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule if the declarant is identified as unavailable as defined in subsection (c)."  725 ILCS 5/115-10.2a(a) (West 2016).  Section 115-10.2a(c) defines unavailability in pertinent part as follows:

> "(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
>
>                                    * * *

(5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means[.]" 725 ILCS 5/115-10.2a(c)(2), (5) (West 2016).

¶ 39    Thus, a statement is admissible under section 115-10.2a if (1) it is not subject to any other hearsay exception, (2) the declarant is unavailable, and (3) it is accompanied by equivalent circumstantial guarantees of trustworthiness.

¶ 40                    A. Other Hearsay Exception Under Section 115-10.2a

¶ 41    We first consider whether any of the statements at issue are "not specifically covered by any other hearsay exception." 725 ILCS 5/115-10.2a(a) (West 2016). The trial court found that two of the statements at issue—Scholl's statements in the recording of the call to the 911 operator and Harrington's testimony regarding those statements—were admissible because they constituted an excited utterance. For a statement to be admissible as an excited utterance, three factors must be present: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, (2) an absence of time to fabricate, and (3) a statement relating to the circumstances of the occurrence. See *People v. Lerma*, 2016 IL 118496, ¶ 5 n.1; *People v. DeSomer*, 2013 IL App (2d) 110663, ¶ 12. Courts use a "totality-of-the-circumstances analysis to decide whether a statement is admissible under the excited-utterance exception." *DeSomer*, 2013 IL App (2d) 110663, ¶ 12. The key inquiry is "whether the statement was made while the excitement of the event predominated." (Internal quotation marks omitted.) *People v. Sutton*, 233 Ill. 2d 89, 107 (2009). This court has found a statement to be spontaneous when the occurrence happened within the past few minutes and the statement was made to the first person the declarant encountered, rather than in response to questioning. *DeSomer*, 2013 IL App (2d) 110663, ¶ 13. An intervening discussion between an occurrence and a statement a party seeks to admit as an excited utterance

destroys the spontaneity of the statement and might cause the declarant to reflect on the statement, moving it outside the realm of the excited-utterance exception. See *People v. Victors*, 353 Ill. App. 3d 801, 810 (2004); *People v. Sommerville*, 193 Ill. App. 3d 161, 175 (1990).

¶ 42    Here, Scholl's statements to the 911 operator did not constitute an excited utterance, because she spoke to several people before she made the statements to the operator. See *Victors*, 353 Ill. App. 3d at 810 (victim's statements to police officer did not fall under the excited utterance exception, due to the intervening conversation with a backup officer); *Sommerville*, 193 Ill. App. 3d at 175 (victim's previous discussion with her fiancé destroyed the spontaneity of any statement given to the police officer). Therefore, the trial court erred in admitting as an excited utterance the recording of those statements as well as Harrington's testimony regarding the statements.

¶ 43    Relying on *People v. Damen*, 28 Ill. 2d 464, 472 (1963) the State argues that statements made in response to questioning from a 911 operator do not lessen their spontaneous nature and may still be considered spontaneous utterances. We do not disagree with that proposition. However, the reason that the statements at issue here lack spontaneity is not because the 911 operator asked Scholl questions—they lack spontaneity because Scholl talked to several people before she talked to the 911 operator.

¶ 44                      B. Unavailability Under Section 115-10.2a

¶ 45    We next consider the trial court's determination that Scholl was unavailable. The trial court found that Scholl was unavailable because she persistently refused to testify. See 725 ILCS 5/115-10.2a(c)(2) (West 2016). To persist means to continue steadfastly or firmly in a course of action. See Dictionary.com, https://www.dictionary.com/browse/persist?s=t www.dictionary.com (last visited Sept. 2, 2020) [https://perma.cc/94S9-BN94]. Thus, "to persist" conveys the idea that one is repeatedly doing something. Here, although the record indicates that the State tried to serve

Scholl numerous times, the record does not establish that she received notice more than once. Based on the record before us, we cannot say that Scholl's failure to appear after being served once constitutes a persistent refusal to testify. *Cf. People v. Wilson*, 331 Ill. App. 3d 434, 438 (2002) (witness was found to have persistently refused to testify where he appeared in court, said that he would not testify, and, after being admonished to stay in the courthouse, left the building).

¶ 46 Nonetheless, we review the trial court's ruling, not its reasoning. See *City of Chicago v. Holland*, 206 Ill. 2d 480, 492 (2003) (a reviewing court can sustain the decision of the circuit court on any grounds called for by the record, regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was sound). We therefore consider the State's argument that the trial properly determined that Scholl was unavailable pursuant to section 115-10.2a(c)(5) because the State served Scholl with process yet she still failed to appear at the hearing.

¶ 47 The defendant insists that the State had to do more than just serve Scholl with process before the trial court could find that she was unavailable. The defendant notes that section 115-10.2a(c)(5) provides that a declarant may be found to be unavailable if the State is unable to obtain her attendance "by process *or* other reasonable means." (Emphasis added.) 725 ILCS 5/115-10.2a(c)(5) (West 2016). The defendant points out that sometimes "or" can also mean "and." See *People v. Tousignant*, 2014 IL 115329, ¶ 11 (explaining that the word "or" is not disjunctive in all circumstances); *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 606 (2008) (explaining that "and" and "or" are used interchangeably depending on the context). The defendant urges us to find that "or" in section 115-10.2a(c)(5) actually means "and." As such, the defendant maintains that the State's failure to do anything other than serve Scholl with process precludes a finding that she was unavailable to testify at trial.

¶ 48    The defendant's argument presents an issue of statutory interpretation. A court conducts *de novo* review when the case involves issues of statutory interpretation. *County of Du Page*, 231 Ill. 2d at 603; *People v. Hall*, 195 Ill. 2d 1, 21 (2000). When interpreting a statute, a court's primary objective is to ascertain and give effect to the intent of the legislature. *People v. Webb*, 2019 IL 122951, ¶ 17. The most reliable indicator of that intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Id.*; *People v. Baskerville*, 2012 IL 111056, ¶ 18. The word "or" is generally disjunctive, and the word "and" is generally conjunctive. *Tousignant*, 2014 IL 115329, ¶ 11. As used in its ordinary sense, the word "or" "connotes two different alternatives." *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 145 (2006).

¶ 49    Pursuant to section 115-10.2a(c)(5) of the Code, the State was required to show that it was "unable to procure [Scholl's] attendance by process or other reasonable means." 725 ILCS 5/115-10.2a(c)(5) (West 2016). The phrase "or other reasonable means" conveys that what preceded the term "or" was also reasonable. Thus, the issue becomes whether service by process alone was reasonable. We believe that this answer turns on the individual facts of the case, as in some cases process alone would be reasonable while in others it would not be. For example, we believe that service by process alone would be reasonable if the witness affirmatively indicated that she had no interest in attending the trial. It would be unreasonable to require the State to take other steps at that point, where the witness has indicated that those steps would be fruitless. See *Wilson*, 331 Ill. App. 3d at 438. Conversely, we do not believe that process alone would be sufficient where the witness has not demonstrated a desire not to attend and other factors existed, such as an inability to attend due to transportation issues, that could interfere with her ability to be present at the trial.

¶ 50    Here, the trial court found that Scholl was unavailable, because she "refused to come to court." It appears that the trial court's basis for that finding was that Scholl had been served with

process but did not appear at the trial. However, there is no indication in the record that Scholl manifested a desire not to attend. Rather, there is an indication in the record that Scholl might have lacked the ability to get to the courthouse. This is evident from the defendant's testimony that Scholl did not have a vehicle at the time the alleged abuse occurred and also from the Kane County Sheriff Department's report that Scholl was homeless at least a month before the trial began. Based on this record, it was incumbent upon the trial court to conduct a more thorough inquiry as to why Scholl was not at the trial. There was no such inquiry and nothing in the record supports a finding that process alone in this case was reasonable. The trial court therefore erred in determining that Scholl was unavailable to testify. Accordingly, all of the testimony that was admitted pursuant to section 115-10.2a of the Code was improper.

¶ 51                                   C. Harmless Error

¶ 52     We next consider the State's argument that, despite the trial court's evidentiary errors, we should nonetheless affirm the trial court's decision because those errors were harmless. When deciding whether an error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction, (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction, or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence. *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008). An error will only be found to be harmless if it is proven beyond a reasonable doubt that the error did not contribute to the defendant's conviction. *People v. Dean*, 175 Ill. 2d 244, 259 (1997).

¶ 53     We cannot say beyond a reasonable doubt that the defendant would have been convicted absent the trial court's errors. The trial court acknowledged that the defendant was convicted on the basis of hearsay testimony. As set forth above, the hearsay evidence consisting of the 911

recording and Harrington's testimony was improperly admitted. As such, we cannot say beyond a reasonable doubt that the defendant would have been convicted absent the improperly admitted evidence. Thus, the trial court's errors were not harmless. See *Rolandis G.*, 232 Ill. 2d at 43; *Dean*, 175 Ill. 2d at 259. We therefore reverse his conviction and remand for a new trial.

¶ 54          D. Circumstantial Guarantees of Trustworthiness and *Crawford*

¶ 55    On remand, there is a possibility that Scholl will not appear and the trial court will again find her unavailable pursuant to section 115-10.2a of the Code. In the interest of judicial economy, we will therefore consider whether the hearsay evidence would be admissible.

¶ 56    Scholl's hearsay statements would not be admissible unless they were accompanied by the "equivalent circumstantial guarantees of trustworthiness" required under the statute. 725 ILCS 5/115-10.2a(a) (West 2016). The statute was originally enacted to comport with the confrontation clause requirements set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). *Rolandis G.*, 232 Ill. 2d at 23.

> "Under *Roberts*, it was not a violation of the sixth amendment confrontation clause to admit out-of-court hearsay statements into evidence as long as the statements were found to be reliable, either because the evidence fell within a firmly rooted hearsay exception or because there were other 'particularized guarantees of trustworthiness.' " *Id.* at 24 (quoting *Roberts*, 448 U.S. at 66).

However, *Crawford v. Washington*, 541 U.S. 36 (2004), overruled *Roberts* and altered the approach to confrontation-clause analysis. *People v. Stechly*, 225 Ill. 2d 246, 264-65 (2007). Under *Crawford*, a testimonial statement of a witness absent from trial is never admissible unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53-54.

¶ 57    If Scholl is unavailable on remand,[2] then, under *Crawford*, Scholl's statements would be admissible at trial only if they were not testimonial or if the defendant had a prior opportunity for cross-examination. As there was no prior opportunity for cross-examination in this case, the only remaining inquiry would be whether each statement was testimonial. See *Stechly*, 225 Ill. 2d at 279 (the threshold question in confrontation-clause analysis is whether the statements are testimonial). Whether a statement is testimonial is a question of a law, subject to *de novo* review. *Sutton*, 233 Ill. 2d at 112. The determination of whether a statement is testimonial "must be made on a case-by-case basis." *Stechly*, 225 Ill. 2d at 296. We now consider each statement in turn.

¶ 58    1. Statements to the 911 Operator and Harrington's Testimony Regarding That Conversation

¶ 59    We believe that the recording of the 911 call and Harrington's testimony regarding Scholl's statements to the 911 operator are analogous to the victim's statements in *Hammon v. Indiana*, which the United States Supreme Court held to be testimonial. See *Davis v. Washington*, 547 U.S. 813, 830 (2006) (*Hammon* is the companion case to *Hammon v. Indiana*). In *Hammon*, police officers responded to a domestic disturbance and found the victim outside her house, appearing "somewhat frightened." (Internal quotation marks omitted.) *Id.* at 819. She told the officers that "nothing was the matter" and her husband told the officers that he and the victim had "been in an argument" but "everything was fine now." (Internal quotation marks omitted.) *Id.* at 819. One

---

[2] If Scholl does appear and testify, then the confrontation clause places no restrictions on her prior hearsay statements because the defendant will have the opportunity to cross-examine and confront Scholl. *Stechly*, 225 Ill. 2d at 279.

officer interviewed the victim while another interviewed her husband, keeping the two apart despite the husband's attempts to participate in the interrogation. *Id.* at 819-20. The officers then had the victim write an affidavit describing the incident. *Id.* at 820.

¶ 60    On review, the Supreme Court held that the victim's statements were testimonial. The Supreme Court explained that there was no ongoing emergency and that the officers learned on arrival that there was no immediate threat and did not ask the victim " 'what is happening,' but rather 'what happened[?]' " *Id.* at 829-30. Here, the circumstances indicate that there was no ongoing emergency or immediate threat. Harrington, not Scholl, placed the 911 call. The 911 operator knew that Scholl was at Hesed House, away from the defendant, and asked Scholl "what happened?" not "what is happening?" When asked if she needed an ambulance, Scholl responded, "No, no, I just want to report it." The purpose of the call was neither to resolve an ongoing emergency nor for Scholl to describe the events as they were still unfolding. See *id.* at 822 (statements are not testimonial when made in the course of police interrogation under circumstances indicating that the primary purpose is to enable police assistance to meet an ongoing emergency); see also *People v. Dominguez*, 382 Ill. App. 3d 757, 767-68 (2008) (statements to 911 dispatcher were not testimonial because the caller was facing an ongoing emergency and was describing events as they were unfolding). Instead, Scholl's statements to the 911 operator were made to establish a record of a past event for future criminal prosecution. Therefore, we determine that these statements were testimonial. Scholl's statements to the 911 operator, as well as Harrington's testimony regarding those statements, would be inadmissible under *Crawford*.

¶ 61                2. Scholl's Statements to Harrington After the 911 Call

¶ 62    In considering whether the statements that Scholl made to Harrington were testimonial, we find instructive our supreme court's analysis in *Rolandis G.*, 232 Ill. 2d at 32-33. There, the State

- 16 -

sought to introduce evidence of a conversation between a child victim of sexual abuse and a child advocate who was unavailable to testify at trial. *Id.* at 19. A police officer who observed the interview from behind a one-way mirror testified as to the substance of the conversation and gave a foundation for the introduction of a video recording of the interview. *Id.* at 19-20. On review, our supreme court held that the statements made to the child advocate were testimonial and, thus, inadmissible. *Id.* at 35-36.

¶ 63 The supreme court explained that, when a person acts as a representative of law enforcement by interrogating another with the main purpose of gathering information about past events for potential future prosecution, then the statements elicited are testimonial. *Id.* When the statement is the product of questioning, either by the police or someone acting as a representative of law enforcement, the objective intent of the questioner, not the declarant, is determinative. *Id.* at 31. Four factors are considered in determining whether one is acting in tandem with law enforcement: (1) whether the interrogator was obligated to work with the police, (2) whether the interrogator actually worked in concert with the police, (3) what the primary purpose of the questioning was, and (4) whether the interview was conducted in a safe place, with no indication of an ongoing emergency. *Id.* at 35. The supreme court found the four factors present, stating that the child advocate who interviewed the victim was required by law to share information with law enforcement. *Id.* The child advocate worked in concert with the police, and the defendant was arrested after the interview took place. *Id.* There was no indication that the primary purpose of the interview was for treatment or to stop an ongoing emergency. *Id.* at 35-36. Instead, the main purpose of the interview "was to gather information about past events for potential future prosecution." *Id.* at 36.

¶ 64    Here, three out of the four factors apply.  Harrington acted in concert with the police as she was the one who initiated the police involvement when she called 911, even though Scholl had not asked her to.  Harrington then listened to Scholl's conversation with the 911 operator and knew that the police would be coming to talk to Scholl.  Harrington then took Scholl to an office and asked her questions similar to those that the 911 operator had asked, until the police arrived.  Specifically, Harrington asked Scholl what had happened.  There was no indication that the purpose of the conversation was for medical treatment or to stop an ongoing emergency, as Scholl again refused an ambulance.  This interrogation took place in a safe location, inside Hesed House and away from the defendant at the motel.  Viewed objectively, the purpose of Harrington's interrogation of Scholl was to establish a record about a past event to use for possible future prosecution, thereby making the statements testimonial.

¶ 65    The State argues that Harrington cannot be deemed a representative of law enforcement, because she is employed by Hesed House.  See *People v. Richter*, 2012 IL App (4th) 101025, ¶¶ 123-135 (statements made to individuals other than government officials, or without government involvement, are not testimonial).  The State does not address or apply the *Rolandis G.* factors.  As stated previously, the determination of whether a statement is testimonial is made on a case-by-case basis.  *Stechly*, 225 Ill. 2d at 296.  Because we find that Harrington acted as a law enforcement representative under *Rolandis G.* and elicited testimonial statements from Scholl in the office after the 911 call, her statements are inadmissible under *Crawford*.

¶ 66                            3. Scholl's Statements to Wysocki

¶ 67    In determining whether the statements Scholl made to Wysocki were testimonial, we consider whether those statements were (1) made in a solemn fashion and (2) intended to establish a particular fact.  See *id.* at 281-82.  A solemn statement is made in a formal fashion, such as made

to a police officer, or if there are severe consequences for dishonesty. *Id.* at 281. When a statement is made outside of police interrogation, the focus is on the declarant's intent. *Id.* at 289.

¶ 68 Here, it is clear that Scholl's statements to Wysocki were not made in a formal fashion. There was no apparent threat of consequences if Scholl were to be dishonest to Wysocki when she told her that the defendant had whipped her with a belt and she showed Wysocki the red welts on her back. Further, Wysocki neither is a police officer nor acted as a representative of law enforcement. Scholl's statements to Wysocki were not testimonial statements made with the primary purpose of establishing or proving past events potentially relevant to future criminal prosecution. *Davis*, 547 U.S. at 822. Therefore, as the statements were not testimonial, the confrontation clause places no restriction on their introduction (although they are still subject to "traditional limitations upon hearsay evidence" (*id.* at 821)). *Stechly*, 225 Ill. 2d at 279.

¶ 69                                  III. CONCLUSION

¶ 70 Our reversal of the defendant's conviction raises the double jeopardy issue. The double jeopardy clause of the United States Constitution prohibits the State from having another opportunity to try a case unless it has in the first trial presented sufficient evidence to prove the defendant guilty beyond a reasonable doubt. *People v. Johnson*, 2013 IL App (2d) 110535, ¶¶ 84-86. Thus, before remanding for a new trial, to avoid double jeopardy, the appellate court must rule upon the sufficiency-of-the-evidence issue. *People v. Taylor*, 76 Ill. 2d 289, 309 (1979). We have carefully reviewed the record in the light most favorable to the prosecution and conclude that the evidence sufficiently supports the trial court's finding of guilt beyond a reasonable doubt. Our determination, however, is not binding on retrial and does not indicate this court's opinion as to the defendant's guilt or innocence.

¶ 71    For the reasons stated, we reverse defendant's conviction and remand the cause for a new

trial.

¶ 72    Reversed and remanded.

---

**No. 2-18-0229**

---

| | |
|---|---|
| **Cite as:** | *People v. Busch*, 2020 IL App (2d) 180229 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kendall County, No. 17-CM-114; the Hon. John F. McAdams, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, Anthony J. Santella, and Josette Skelnik, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric C. Weis, State's Attorney, of Yorkville (Patrick Delfino, Edward R. Psenicka, and Katrina M. Kuhn, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---